**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (SD-0016)**
**Joseph A. Osefchen, Esq. (JO-5472)**
**Shane T. Prince, Esq. (SP-0947)**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**HATTIS & LUKACS**
**Daniel M. Hattis, Esq.***
**Paul Karl Lukacs, Esq.***
**11711 SE 8th St, Ste 120**
**Bellevue, WA 98005**
**(425) 233-8650**
**\* Pro Hac Vice Application**
  **To Be Submitted**

**Attorneys for Plaintiffs and the Proposed Class**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| ROBYN POSTERNOCK, MURIEL SALTERS and PHILIP MUNNING, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SIRIUS XM RADIO INC., <br><br> Defendant. | CIVIL ACTION NO. <br><br> **CLASS ACTION COMPLAINT** |

Plaintiffs Robyn Posternock, Muriel Salters, and Philip Munning, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendant Sirius XM Radio Inc. ("SiriusXM" or "Defendant"):

### INTRODUCTION

1.     This is a proposed class action, brought under New Jersey law on behalf of a class comprised solely of New Jersey citizens, challenging a deceptive pricing scheme whereby SiriusXM falsely advertises its music plans at lower prices than it actually charges. Specifically, SiriusXM fails to include in its advertised and promised prices the amount of its invented "U.S.

1

Music Royalty Fee" (the "Fee"), which increases the <u>true</u> plan price by a whopping 21.4% above the advertised and promised price for each plan.

2.      SiriusXM intentionally does not disclose the Fee to its New Jersey customers. SiriusXM even goes so far as to not mention the words "U.S. Music Royalty Fee" in <u>any</u> of its advertising, not even in the fine print.  SiriusXM's sole advertising disclaimer is that "Fees and taxes apply," but in reality the U.S. Music Royalty Fee and state taxes are the only components of "Fees and Taxes."

3.      Once consumers have been lured to sign up, SiriusXM prevents them from learning about its scheme by <u>never</u> thereafter sending its customers periodic bills or payment receipts.  All the while, SiriusXM silently and automatically renews their subscriptions month after month and year after year.  And, as the price of its customers' music plans increase—<u>e.g.</u>, when a promotional rate expires—the U.S. Music Royalty Fee, being a flat 21.4% charge, also increases.

4.      Notably, <u>none</u> of SiriusXM's competitors charge a separate royalty fee over and above their advertised music plan prices.  SiriusXM knows that reasonable consumers would not expect SiriusXM to charge the U.S. Music Royalty Fee, let alone call it "Fees and Taxes."

5.      Even the <u>name</u> of the U.S. Music Royalty Fee is deceptive.  SiriusXM misleadingly calls it a "U.S." fee to falsely indicate to consumers (<u>i.e.</u>, to those few consumers who learn about its existence) that it is a government-related fee when in fact it is not.

6.      In the event that a subscriber happens to notice that he or she has been charged the U.S. Music Royalty Fee and then contacts SiriusXM to inquire about the Fee, SiriusXM has a policy and practice of falsely telling the subscriber that the Fee is a government-related fee and/or that it is outside of SiriusXM's control.

7.      SiriusXM's U.S. Music Royalty Fee scheme has been the source of **all** of SiriusXM's profits for the past several years.  For example, in 2022, SiriusXM collected $1.36 billion in U.S. Music Royalty Fee charges, while the entire company had net profits of $1.21 billion.  In other words, in 2022, U.S. Music Royalty Fee revenues were equal to 122% of the net profits for the entire company.[1]

8.      SiriusXM falsely advertised the prices of its music plans to Plaintiffs and Class members, and SiriusXM never adequately disclosed to them that the U.S. Music Royalty Fee would be charged on top of its advertised prices, increasing those prices by a flat 21.4% for each customer.  Nor did SiriusXM ever disclose to its customers the true nature of the Fee—i.e., a profit center for SiriusXM.  Meanwhile, SiriusXM's sign-up process, automatic renewal process, and policy of not sending periodic billing notices or payment receipts are deliberately designed to prevent subscribers from learning of the U.S. Music Royalty Fee.

9.      SiriusXM automatically charges the U.S. Music Royalty Fee to nearly all of its New Jersey subscribers.  Since SiriusXM invented and introduced the Fee in 2009, Plaintiffs estimate that SiriusXM has unlawfully extracted over $300 million from New Jersey consumers in U.S. Music Royalty Fee charges.

10.     Plaintiffs Robyn Posternock, Muriel Salters, and Philip Munning bring this lawsuit individually and as private attorneys general seeking public injunctive relief to protect the general public by putting an end to SiriusXM's unlawful advertising and overcharging scheme.  Plaintiffs also seek declaratory relief, including a declaration that SiriusXM's arbitration clause is unconscionable and/or unenforceable as to Plaintiffs and the proposed Class of New Jersey SiriusXM subscribers who signed up by phone, and a declaration that SiriusXM's

---

[1] In 2022, SiriusXM had subscriber revenues of $6.37 billion, 21.4% of which (i.e., $1.36 billion) were payments of the U.S. Music Royalty Fee.

practices alleged herein are unlawful under New Jersey law. Plaintiffs also seek restitution on behalf of themselves and the class, including disgorgement of all revenues and/or unjust enrichment SiriusXM obtained from them as a result of the unlawful conduct alleged herein. Plaintiffs further seek damages for Plaintiffs and class members in the amount they paid in U.S. Music Royalty Fees, and in the amount of their overpayments which resulted from SiriusXM's deceptive automatic renewal practices.

11.     Specifically, Plaintiffs seek injunctive, declaratory, monetary, and statutory relief for themselves and the proposed class to obtain redress and to end SiriusXM's unlawful policy of charging this deceptive, undisclosed additional Fee, bringing:

a.     A claim under the New Jersey Consumer Fraud Act ("CFA"), in that SiriusXM's uniform policies as described herein constitute an unconscionable commercial practice, SiriusXM's written statements to the class as described herein include false statements of affirmative fact, and SiriusXM's failure to adequately disclose the existence and basis of the Fee are material omissions, all of which violate N.J.S.A. § 56:8-2;

b.     A claim under the New Jersey Truth in Consumer Contract Warranty and Notice Act ("TCCWNA"), in that SiriusXM has presented, shown, offered, and submitted consumer notices to Plaintiffs and the class that violated their clearly established rights arising under state law, as prohibited by N.J.S.A. § 56:12-15;

c.     A claim under New Jersey common law for breach of the implied covenant of good faith and fair dealing based on SiriusXM's uniform policies as alleged herein; and

        d.     A claim under the New Jersey Declaratory Judgment Act, N.J.S.A. § 2A:16-51, et seq., for an order for injunctive and declaratory relief: (1) declaring that SiriusXM's policy of charging a deceptive and inadequately disclosed Fee is a violation of New Jersey law; (2) enjoining SiriusXM from continuing to charge the Fee to its customers without adequate disclosure thereof (and agreement thereto); (3) ordering SiriusXM to hold in constructive trust all Fee payments received from the class; and (4) ordering SiriusXM to perform an accounting of all such Fee payments.

12.     To be clear, Plaintiffs are not seeking to regulate the existence or amount of the U.S. Music Royalty Fee (although Plaintiffs contend that the name of the Fee is deceptive because SiriusXM intentionally calls it a "U.S." fee to trick consumers into thinking it is a government-related fee). Rather, Plaintiffs merely want SiriusXM to include the amount of the so-called U.S. Music Royalty Fee in the music plan prices it advertises to the general public, and to adequately disclose the Fee and its true nature and basis.

## II.    THE PARTIES

13.     Plaintiff Robyn Posternock is a citizen and resident of Nutley, New Jersey, and was a subscriber of SiriusXM's music plans during the class period. Like every other class member, Plaintiff Posternock has been victimized by the same uniform policies described in detail herein, in that she signed up for SiriusXM's music plans on the phone with a SiriusXM agent in the manner described herein, received or was directed to the same uniformly-worded documents, emails, and/or websites described herein, and paid the undisclosed, extra-contractual U.S. Music Royalty Fee complained of herein.

14.     Plaintiff Muriel Salters is a citizen and resident of Elizabeth, New Jersey, and was a subscriber of SiriusXM's music plans during the class period. Like every other class member,

Plaintiff Salters has been victimized by the same uniform policies described in detail herein, in that she signed up for SiriusXM's music plans on the phone with a SiriusXM agent in the manner described herein, received or was directed to the same uniformly-worded documents, emails, and/or websites described herein, and paid the undisclosed, extra-contractual U.S. Music Royalty Fee complained of herein.

15.     Plaintiff Philip Munning is a citizen and resident of Ocean City, New Jersey, and was a subscriber of SiriusXM's music plans during the class period.  Like every other class member, Plaintiff Munning has been victimized by the same uniform policies described in detail herein, in that he signed up for SiriusXM's music plans on the phone with a SiriusXM agent in the manner described herein, received or was directed to the same uniformly-worded documents, emails and/or websites described herein, and paid the undisclosed, extra-contractual U.S. Music Royalty Fee complained of herein.

16.     Defendant Sirius XM Radio Inc. ("SiriusXM") is a corporation chartered under the laws of Delaware, with its principal place of business in New York, and thus is a citizen of Delaware and New York.  SiriusXM owns and operates office and engineering facilities in Lawrenceville, New Jersey and technical/engineering facilities in Vernon, New Jersey.

17.     Defendant Sirius XM Radio Inc. created, implemented, participated in the collection of, and shared in the proceeds from, the unlawful scheme at issue in this Complaint, namely, the imposition, charging, and collection of the undisclosed, extra-contractual U.S. Music Royalty Fee to its New Jersey customers.

## III.   <u>JURISDICTION AND VENUE</u>

18.     Jurisdiction over this matter is proper in the United States District Court under the Class Action Fairness Act in that this is a proposed class action, the Defendant is a citizen of

different states than the Plaintiffs and the members of the proposed Class, and the amount in controversy exceeds $5 million.

19.     This Court has personal jurisdiction over SiriusXM because: (1) SiriusXM owns and operates office and engineering facilities, as well as technical/engineering facilities, in the State of New Jersey; (2) SiriusXM is authorized to do business and in fact regularly conducts business in the State of New Jersey; (3) the claims alleged herein took place in New Jersey; and/or (4) SiriusXM has committed tortious acts within the State of New Jersey (as alleged, without limitation, throughout this Complaint).

20.     Venue is proper pursuant to 28 U.S.C. §1391 in the District of New Jersey, Newark Vicinage, in that Plaintiffs and all class members are New Jersey citizens, and Plaintiffs Posternock and Salters reside in and are citizens of this District and Vicinage.  Moreover, SiriusXM owns and operates technical/engineering facilities in this District and Vicinage.

21.     This case is not subject to forced arbitration or any prohibition on class actions because Plaintiffs and the Class were never shown, and never agreed to, any arbitration clause or class action waiver with respect to Defendant or the claims made herein either before or at the time they signed up for a SiriusXM music plan on the phone with a SiriusXM agent.

## IV.     FACTUAL ALLEGATIONS OF SIRIUSXM'S DECEPTIVE PRICING SCHEME

22.     Defendant provides SiriusXM-branded satellite radio and internet-only streaming plans to approximately 34 million consumers nationwide, including New Jersey.  Nearly all of the service plans offered by SiriusXM include music channels ("music plans").

23.     SiriusXM falsely advertises its music plans at lower rates than it actually charges by not disclosing, and not including in the advertised price, the amount of its invented "U.S. Music Royalty Fee," which increases the true plan price by a whopping 21.4% over and above the advertised price for the plan for each SiriusXM customer.  SiriusXM intentionally does not

disclose the extra Fee.  SiriusXM even goes so far as to not mention the words "U.S. Music Royalty Fee" in <u>any</u> of its advertising, including in the fine print.  Once consumers have been lured to sign up, SiriusXM prevents them from learning about its scheme by <u>never</u> thereafter sending its customers periodic bills or payment receipts.  All the while, SiriusXM silently and automatically renews their subscriptions month after month and year after year.

24.     SiriusXM imposes the U.S. Music Royalty Fee on all subscribers of its satellite radio music plans (satellite radio subscribers comprise the overwhelming majority of SiriusXM subscribers).  SiriusXM also imposes the U.S. Music Royalty Fee on most subscribers of its less popular SiriusXM-branded internet-only streaming music plans.[2]

25.     The overwhelming majority of SiriusXM subscribers utilize SiriusXM's services in their automobiles.  SiriusXM's satellite radios are pre-installed in 84% of the over 13 million new automobiles sold each year in the United States.[3]  All of the 13 million-plus annual buyers of new vehicles are <u>automatically</u> provided a free 3- to 6-month trial of SiriusXM service.[4] SiriusXM's satellite radios are also already installed in 51% of the 36 million used automobiles sold each year.[5]  Many of the buyers of these used vehicles are likewise automatically enrolled in free SiriusXM trials.

---

[2] The only streaming music plan subscribers who are not charged the U.S. Music Royalty Fee are streaming music subscribers of the SiriusXM app who are signed up and billed through the Apple App Store or Google Play Store platforms.

[3] *See* "Car Market Puts SiriusXM's 2022 Growth Plans Into The Slow Lane," InsideRadio.com, July 28, 2022, available at https://www.insideradio.com/free/car-market-puts-siriusxm-s-2022-growth-plans-into-the-slow-lane/article_c577b85c-0ea6-11ed-a4f3-6316ccfafd88.html#:~:text=Its%20receivers%20are%20now%20installed,satellite%20radio%20don't%20bother.

[4] More specifically, new cars generally come with a free trial of SiriusXM's Platinum Plan, with 165+ channels including dozens of music channels.

[5] *Id. Also see* report on used vehicle market based on data from Cox Automotive, at https://www.autonews.com/used-cars/used-car-volume-hits-lowest-mark-nearly-decade#:~:text=The%20number%20of%20used%20cars,about%2035.8%20million%20were%20sold.

26.     SiriusXM's business model relies on converting these millions of vehicle buyers from free trial users into paid subscribers of automatically renewing music plans.

27.     This effort begins with a revenue-sharing arrangement with the leading automakers: SiriusXM pays over $1 billion a year in subsidies and revenue splits to the automakers.[6]  Pursuant to this revenue sharing arrangement, automotive dealerships submit the contact information of their recent car buyers directly to SiriusXM's marketing department.  The automakers and auto dealers then get a cut of the SiriusXM subscription revenue that results.

28.     After receiving the contact information of the vehicle buyers, SiriusXM proceeds to inundate them with marketing emails, direct mailers, and telemarketing calls in an attempt to get the consumers to provide their credit or debit card information to SiriusXM so that SiriusXM can sign them up for paid—and automatically renewing—music plan subscriptions.

**A.     <u>The U.S. Music Royalty Fee.</u>**

29.     The U.S. Music Royalty Fee is a uniform additional 21.4% charge that SiriusXM collects from SiriusXM subscribers over and above the advertised and quoted price of each music plan.[7]

30.     SiriusXM invented and first added the U.S. Music Royalty Fee to its music plans in 2009, at a 13.9% flat rate charge. Since then, SiriusXM has increased the Fee to the current 21.4% rate.

---

[6] For example, in 2016, SiriusXM paid about $1 billion a year in subsidies and revenue splits to automakers. *See* Sisario, Ben, "SiriusXM Fights to Dominate the Dashboard of the Connected Car," New York Times, February 20, 2016 (behind pay wall at https://www.nytimes.com/2016/02/21/business/media/siriusxm-fights-to-dominate-the-dashboard-of-the-connected-car.html).

[7] Notably, SiriusXM charges its customers a U.S. Music Royalty Fee equal to 21.4% of whatever the customers agreed to pay for their music plans, rather than a flat amount.  Thus, customers who pay $5 per month for their music plans pay a Fee of $1.07, while customers who pay a higher monthly amount pay a higher fee.  For example, Plaintiff Munning pays $22.99 per month for his music plan plus a U.S. Music Royalty Fee of $4.92 per month (i.e., 21.4% more than he agreed to pay).  Of course, SiriusXM never discloses or explains this to its customers.

31.     SiriusXM's U.S. Music Royalty Fee scheme has been the source of **all** of SiriusXM's profits for the past several years.  For example, in 2022, SiriusXM collected $1.36 billion in U.S. Music Royalty Fee charges, while the entire company had net profits of $1.21 billion.  In other words, in 2022, U.S. Music Royalty Fee revenues were equal to 122% of the net profits for the entire company.[8]

32.     The U.S. Music Royalty Fee scheme is at the heart of SiriusXM's marketing plan. The scheme enables SiriusXM to falsely advertise its music plans for much lower rates than what SiriusXM actually charges, in order to lure as many consumers as possible into signing up for automatically-renewing subscriptions and paying more than they otherwise would have paid.

33.     Then, after a customer has agreed to sign up for a SiriusXM music plan at the advertised and quoted price, SiriusXM unilaterally imposes the undisclosed, extra-contractual U.S. Music Royalty Fee, thereby increasing the actual price for its music plans by 21.4% more than its advertised prices that the customers agreed to pay.

34.     Meanwhile, SiriusXM is alone in charging such a fee.  None of SiriusXM's major music streaming competitors (for example, Apple Music, Spotify, Amazon Music, Google Play Music) charge any such separate music royalty fee over and above their advertised music plan prices.  Reasonable consumers would not expect SiriusXM to charge such a fee, let alone hide it as "Fees and Taxes."  The U.S. Music Royalty Fee is, in fact, simply a disguised double-charge for the music plan itself.

35.     SiriusXM automatically charges the U.S. Music Royalty Fee to nearly all of its New Jersey subscribers.  Since SiriusXM invented and introduced the Fee in 2009, Plaintiffs

---

[8] In 2022, SiriusXM had subscriber revenues of $6.37 billion, 21.4% of which (i.e., $1.36 billion) were payments of the U.S. Music Royalty Fee.

estimate that SiriusXM has unlawfully extracted over $300 million from New Jersey consumers in U.S. Music Royalty Fee charges.

**B.**     **SiriusXM Fails to Disclose the U.S. Music Royalty Fee in Its Advertisements.**

36.     SiriusXM advertises its satellite radio and streaming music plans through marketing directed at the consuming public in New Jersey and throughout the United States via email campaigns, direct mail campaigns, telemarketing campaigns, internet advertising, television advertising, and radio advertising.  Meanwhile, the tens of millions of automobiles which are equipped with a SiriusXM satellite radio, but which do not have an active trial or a current paid subscription, will constantly prompt the consumer to subscribe to SiriusXM anytime the consumer switches the car audio system to the SiriusXM radio setting.

37.     Through all of these channels, SiriusXM consistently and prominently advertises flat periodic prices for its music plans, without disclosing or including the amount of the U.S. Music Royalty Fee in the advertised price.

38.     None of SiriusXM's advertisements for music plans names or mentions the existence of the U.S. Music Royalty Fee or its amount—not even in the fine print.  Likewise, none of SiriusXM's advertisements states the true music plan price after adding the amount of the U.S. Music Royalty Fee.  And there is no asterisk adjacent to the advertised price in any of SiriusXM's advertisements or materials.

39.     SiriusXM's sole advertising disclaimer is that "Fees and taxes apply," but in reality the U.S. Music Royalty Fee and state taxes are the only components of "Fees and Taxes." Given that the U.S. Music Royalty Fee is in fact the primary component of "Fees and Taxes," SiriusXM has essentially relabeled the U.S. Music Royalty Fee as "Fees and Taxes" for the sole purpose of deceiving consumers.

40.    Meanwhile, <u>none</u> of SiriusXM's competitors charge any separate royalty fee over and above their advertised music plan prices.  SiriusXM knows that reasonable consumers would not expect SiriusXM to charge the U.S. Music Royalty Fee, let alone call it "Fees and Taxes."

41.    Below is an example of a marketing direct mailer sent by SiriusXM in December 2022 to a consumer who was in a SiriusXM free trial that automatically came with a new vehicle:

**SiriusXM Promotional Mailer to Consumer in Free Trial With New Vehicle**



42.     The above mailer is a typical example of the millions of promotional mailers that SiriusXM sends to new vehicle purchasers each year.  Notably, the top right of the ad features "Get 12 Months for $5/Month," but makes no mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07) that the plan actually costs due to the Fee.  There is no asterisk next to the advertised price, and in fact nowhere in the entire mailer—not even in the fine print at the bottom—is there any mention whatsoever of the U.S. Music Royalty Fee or its amount.  The only disclosure language in the entire mailer is the phrase "Fees and taxes apply," which is in small print in the circle on the left of the ad, where it also says "See Offer Details below."  But the "Offer Details" (which can be found in the fine print at the bottom of the mailer) likewise only states the same phrase "Fees and taxes apply," with no further details.  It does not mention the U.S. Music Royalty Fee by name or what the additional "Fees and taxes" are or their amounts.  The "Offer Details" fine print mentions that the plan will automatically renew after the 12-month promotion "at then-current rates (currently, $17.99)"—but again does not disclose that the actual rate at which the plan will be renewed is 21.4% higher than the advertised "then-current" rate (i.e., a true rate of $21.84) due to the U.S. Music Royalty Fee.  Nor does the mailer mention that, as the music plan rate increases from $5 to $17.99, the (undisclosed) Fee will more than triple from $1.07 to $3.85.[9]

43.     Below is an example of a marketing email sent by SiriusXM in February 2023 to a consumer whose free SiriusXM trial (which came with a newly purchased vehicle) elapsed:

---

[9] The intentional nature of SiriusXM's misrepresentations and omissions are further evidenced by the fact that while Defendant Sirius XM Radio Inc. decided to totally avoid mentioning the name of the U.S. Music Royalty Fee or its amount in any of its advertising (including even in the "Offer Details" fine print, as reflected in the ads printed in this Complaint), the company's Canadian sister company, Sirius XM Canada Inc., chose a different approach. Sirius XM Canada Inc., in contrast, decided to go ahead and disclose the name of the fee and its percentage amount (which in Canada is called the "Music Royalty and Administrative Fee") in the "Offer Details" fine print of its otherwise nearly identical ads.

**SiriusXM Promotional Email to Consumer Whose Vehicle Free Trial Elapsed**



44.     The above email is a typical example of the millions of emails SiriusXM sends to purchasers of new automobiles who are in an automatic free trial of SiriusXM or whose trial has already elapsed.  Notably, the email states the price is "JUST $5/MO", but makes no mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07) that the plan actually costs due to the Fee.  There is no asterisk next to the advertised price, and in fact nowhere in the entire

email—not even in the fine print at the bottom—is there any mention whatsoever of the U.S. Music Royalty Fee or its amount.  Nowhere in the email, even in the fine print at the bottom, is there any mention of the existence of any fees at all.  There is a phrase "See Offer Details," but there is no "Offer Details" section in the email.  It turns out that the white "Offer Details" text is a non-obvious hyperlink (with no hyperlink indicators).  If the consumer figured out to click on the "Offer Details" text on the email, the consumer would be brought to the webpage below:



45.     This offer/disclaimer webpage promises "$5/mo for 12 months," but makes no mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07) which the plan actually costs due to the Fee.  Below the prominent text "$5/mo for 12 months," smaller text reads "Then $18.99/mo. Fees & taxes apply. See **Offer Details** below."  But the fine print "Offer Details" at the bottom of the webpage states only the same phrase "Fees and Taxes apply," with no further details.  It does not mention the U.S. Music Royalty Fee by name or what the additional "Fees and Taxes" are or their amounts.  Most significantly, it fails to mention that the renewal rate will not be the promised "$18.99/mo." but rather will be 21.4% higher—where the undisclosed Fee will increase nearly four-fold to $4.06—for an actual total of $23.05 per month.

   **C.      SiriusXM Fails to Disclose the U.S. Music Royalty Fee to Consumers on Its Website.**

46.     For years, SiriusXM's consumer website has advertised its music plans by prominently featuring flat periodic prices for the plans, without disclosing or including the amount of the U.S. Music Royalty Fee in the advertised price.

47.     For example, SiriusXM's website recently listed the following music plans (on the "Browse Plans and Pricing" webpage).

**Music Plans Offered on the SiriusXM Website**



48.     All of these options (including both the 3-month promotional $1 price, and the stated higher prices after the 3 months) are presented as having a flat rate.  The prices exclude the additional 21.4% charge for the U.S. Music Royalty Fee.  The prices do not have asterisks and the only disclosure language is on the left side, where smaller print says "Plus fees and taxes <u>See Offer Details Below</u>."  But the "Offer Details" at the bottom of the webpage (which follows a section of "Frequently Asked Questions" that likewise makes no mention of the Fee), states

only the same phrase "Fees and taxes apply."  It does not mention the U.S. Music Royalty Fee by name or what the additional "Fees and taxes" are or their amounts.

49.     If the consumer clicks on the blue "GET" button for the respective music plan, the consumer is taken through SiriusXM's online purchase process. Each page of the purchase process features "$1 for 3 months" on the top, and smaller text stating the higher price after the 3 months (e.g., "Then 23.99/mo.").

50.     Below is the final page of the purchase process (the order submission page) for the Platinum music plan.  This final order submission page is the only page of the entire purchase process which lists a specific additional amount for "Fees and Taxes."



52.     Under "Order Summary," SiriusXM shows a price of $1.00 for 3 months of the music plan ($0.33/mo), plus "Fees and Taxes" of $0.21.  In this example, "Fees and Taxes" are comprised entirely of the undisclosed 21.4% U.S. Music Royalty Fee (i.e., $0.21 = 21.4% of the $1.00 plan price).  Similarly, when the promotional rate of "$1.00 for 3 months" expires and the customer's monthly rate automatically increases to the stated "$23.99/mo.," the U.S. Music Royalty Fee comprises the entire amount of the additional "Fees and Taxes" of $5.13 per month.

53.     SiriusXM disguises the amount of its invented and deceptive U.S. Music Royalty Fee as "Fees and Taxes."  Given that the U.S. Music Royalty Fee is in fact the sole and exclusive "Fee" component of "Fees and Taxes" (as SiriusXM charges no other fees to New Jersey customers, only state taxes), SiriusXM has essentially relabeled the U.S. Music Royalty Fee as "Fees and Taxes," ostensibly for the purpose of deceiving consumers.  SiriusXM knows and intends that reasonable consumers will understand and assume that the amount listed as "Fees and Taxes" is comprised of legitimate taxes and government-related fees passed on by SiriusXM to its subscribers. SiriusXM knows and intends that reasonable consumers would not expect that SiriusXM—unlike every other music streaming service—would invent and charge the so-called "U.S. Music Royalty Fee" over and above the advertised price for the music plan.  And SiriusXM knows that consumers certainly would not expect such a charge to be labeled as "Fees and Taxes."

**D.      SiriusXM Fails to Disclose the U.S. Music Royalty Fee to Consumers When They Sign Up Over the Phone.**

54.     Likewise, SiriusXM sales and customer service agents have been trained for years, as a matter of company policy, to present telephone customers with the advertised flat periodic prices for its music plans without disclosing the U.S. Music Royalty Fee.  The music plan prices that agents quote to such telephone customers exclude the cost of the U.S. Music

Royalty Fee.  At most, agents may say the cost is the advertised or quoted price plus unspecified "Fees and Taxes."  SiriusXM knows and intends that a reasonable consumer would interpret the phrase "Fees and Taxes" to mean only taxes or government-related fees.

      **E.**      **SiriusXM Continues to Deceive Customers After They Sign Up.**

      55.      SiriusXM continues to deceive customers about the true price of its music plans and the existence and nature of the U.S. Music Royalty Fee even after they have signed up.

      56.      SiriusXM has implemented policies and practices which prevent its subscribers from noticing that they are being charged the Fee.  For example, after the initial signup email, SiriusXM never thereafter sends the subscriber periodic bills or itemized payment receipts.

      57.      In fact, the sole billing document the subscriber may ever receive which mentions the existence of the U.S. Music Royalty Fee is that initial signup email (which is sent immediately after the customer signs up), where the mention is buried toward the bottom.  This signup email contains no explanation whatsoever of the Fee, not even in the fine print.

      58.      Meanwhile, if the customer were to log into his or her customer account dashboard on the SiriusXM website, the default view shows only the total amount due and does not list, let alone explain, the U.S. Music Royalty Fee.

      59.      Even the name of the U.S. Music Royalty Fee is deceptive.  SiriusXM calls it a "U.S." fee to falsely indicate to consumers (i.e., to those few consumers who learn about its existence) that it is a government-related fee, when in fact it is just another profit center for SiriusXM.

      **1.**      **In Order to Prevent Subscribers From Learning of Its Scheme, SiriusXM Signs Up Customers for Auto-Renewal by Default and Then Never Sends Customers Periodic Bills or Receipts.**

      60.      SiriusXM's automatic renewal and billing process is designed to prevent its subscribers from learning of its U.S. Music Royalty Fee scheme.  SiriusXM signs up customers

for automatic renewal by default (most customers have monthly plans, but SiriusXM also offers quarterly, semi-annual, and annual plans).  And after the initial signup email, SiriusXM <u>never</u> thereafter emails the customer any bills—or even receipts—of the ongoing charges.

61.    In fact, most SiriusXM customers initially sign up with SiriusXM by providing their credit card for a free multi-month trial or for a multi-month, greatly discounted promotional rate.  SiriusXM's policy of never sending periodic billing notices includes failing to send any notice of the pending expiration of a consumer's multi-month free trial or promotional rate prior to charging that customer the higher rate.

62.    The only evidence of the monthly (or other subscription term) charges by SiriusXM that a customer may receive is on his or her bank or credit card billing statement— which only lists a total dollar amount and makes no mention of the U.S. Music Royalty Fee.

63.    It is telling that while SiriusXM intentionally sends <u>zero</u> periodic billing notices or invoices to its subscribers, SiriusXM meanwhile makes sure to inundate and benumb these same subscribers with <u>marketing</u> emails nearly every other day (totaling over a dozen each month), such that subscribers come to assume that <u>any</u> emails they receive from SiriusXM are marketing or promotional emails.

> **2.    If a Subscriber Notices and Asks About the Fee, SiriusXM Agents Falsely Say That the Fee Is Government-Related or Outside of SiriusXM's Control.**

64.    In the event that a subscriber happens to notice the U.S. Music Royalty Fee has been charged and then contacts SiriusXM to inquire about the Fee, SiriusXM agents falsely tell the subscriber that the Fee is a government-related fee and/or that is outside of SiriusXM's control.

65.    For example, on March 10, 2023, SiriusXM subscriber Christopher Carovillano logged into the SiriusXM website to cancel his subscription after he learned about the existence

of the U.S. Music Royalty Fee.  Mr. Carovillano clicked a link to start a chat with an online

customer service agent.  Mr. Carovillano told the agent that he wanted to cancel his subscription

and that he wanted the U.S. Music Royalty Fees he had paid to be refunded to him.

66.     The SiriusXM chat agent responded by falsely stating that the U.S. Music Royalty

Fee was "government mandated."  The agent told him that the Fees he had paid could not be

refunded.  The agent tried to prevent Mr. Carovillano from cancelling by offering him a lower

promotional rate for his current music plan "plus fees and taxes," but Mr. Carovillano rejected

the offer and demanded that the agent terminate his service.

67.     The chat agent's statement that the U.S. Music Royalty Fee was "government

mandated" reflects SiriusXM's policy of falsely telling customers who ask about the Fee that it is

a government-related fee and/or is outside of SiriusXM's control.

## V.     PLAINTIFFS' FACTUAL ALLEGATIONS

68.     All Plaintiffs are citizens of New Jersey and are current customers of SiriusXM,

or were during the relevant class period.  All Plaintiffs signed up for their SiriusXM music plans

on the phone with a SiriusXM agent.

69.     When Plaintiffs purchased their music plans, SiriusXM prominently advertised

and quoted to them that their plans would cost a particular monthly, quarterly, semi-annual or

annual price.  SiriusXM did not disclose to Plaintiffs, at any time before or when they signed up,

that it would charge them a U.S. Music Royalty Fee in addition to the advertised and promised

price.  Moreover, Plaintiffs never agreed to pay a U.S. Music Royalty Fee to SiriusXM.

70.     Despite this, SiriusXM has charged, and continues to charge, a U.S. Music

Royalty Fee to each Plaintiff.

71.     SiriusXM never adequately disclosed the U.S. Music Royalty Fee to Plaintiffs in any form or fashion, and Plaintiffs never agreed to pay the U.S. Music Royalty Fee to SiriusXM. In fact, Plaintiffs were not aware of the existence of the Fee until well after they signed up for service, if at all.

72.     Specifically, SiriusXM never provided Plaintiffs with notice or adequate notice that they would be (or were being) charged the U.S. Music Royalty Fee—not at sign-up, not on any periodic bill or invoice, not via mail or email, not on SiriusXM's website, or otherwise. Further, SiriusXM did not provide Plaintiffs with any information regarding the true nature or basis of the U.S. Music Royalty Fee, and never provided Plaintiffs with any opportunity to agree or object to the Fee.  In fact, no Plaintiff ever agreed to pay the U.S. Music Royalty Fee to SiriusXM.

73.     Instead, SiriusXM silently and automatically charged Plaintiffs' credit or debit card, without giving them any mail or email notice whatsoever of said charges and without ever mailing or emailing them a single billing statement or itemized receipt.

74.     Indeed, SiriusXM has never mailed or emailed Plaintiffs a single periodic billing statement or receipt since they signed up.  But meanwhile, SiriusXM has inundated Plaintiffs' email inbox with a dozen or so marketing and promotional emails each and every month.  In other words, since Plaintiffs signed up for their music plans, SiriusXM has sent zero periodic billing notices or itemized receipts to Plaintiffs, while at the same time sending them dozens of marketing emails promoting various features and upsells.  None of these marketing emails made any mention whatsoever of the existence of the U.S. Music Royalty Fee.

75.     Moreover, SiriusXM misrepresented the true nature of the U.S. Music Royalty Fee, as described herein.

24

76.     Because the U.S. Music Royalty Fee was not included in the quoted price for Plaintiffs' music plans, SiriusXM has for years been charging Plaintiffs more than what Plaintiffs agreed and contracted to pay for their music plans, and the promised plan price that SiriusXM advertised and quoted to each Plaintiffs was false.  SiriusXM concealed and failed to disclose the true price of its music plans to Plaintiffs.

77.     Plaintiffs did not expect (and were never told) that SiriusXM would charge them a U.S. Music Royalty Fee on top of the advertised music plan price or that the true price of the music plans they had agreed to purchase would include an extra-contractual, unilaterally-imposed U.S. Music Royalty Fee.  That information was material to Plaintiffs.  Had Plaintiffs known that information, they would not have been willing to pay as much for their music plans and would have acted differently.

78.     Plaintiffs seek recovery of the full amounts of the U.S. Music Royalty Fees charged to them by SiriusXM.

79.     Plaintiffs have a legal right to rely now, and in the future, on the truthfulness and accuracy of SiriusXM's representations and advertisements regarding the price of its music plans.  Plaintiffs believe that they were given the services that SiriusXM promised them—just not at the prices that SiriusXM promised and advertised to them, which Plaintiffs agreed to pay.

80.     Each Plaintiff remains a SiriusXM subscriber as of this filing.  Plaintiffs will continue their SiriusXM service, and will sign up for SiriusXM music plans in the future.  However, Plaintiffs want to be confident that the advertised and quoted prices for SiriusXM's music plans are the true and full prices for those plans (i.e., that the prices include all applicable discretionary service fees such as the U.S. Music Royalty Fee), and that all discretionary fees like the U.S. Music Royalty Fee are adequately disclosed.  And, if SiriusXM introduces any new

or invented discretionary fees (like it did with the U.S. Music Royalty Fee), Plaintiffs want to be confident that SiriusXM will include the amount of those fees in the advertised and quoted music plan prices, and that such fees are included in the music plan price <u>before</u> Plaintiffs and other New Jersey customers sign up for and agree to purchase SiriusXM's services.  Plaintiffs will be harmed if, in the future, they are left to guess as to whether SiriusXM's representations are accurate and whether there are omissions and misrepresentations of material facts regarding the music plans being advertised and represented to them.

## VI.      <u>CLASS ALLEGATIONS</u>

81.      Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), seeking damages, statutory penalties, and injunctive relief under New Jersey state law on behalf of themselves and all members of the following proposed class:

> **All current and former SiriusXM subscribers in New Jersey who signed up for a music plan on the phone with SiriusXM, and who paid a "U.S. Music Royalty Fee" within the applicable statute of limitations.**

82.      **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period (and the corresponding class period) to the date on which SiriusXM first began charging the U.S. Music Royalty Fee (which, based on the investigation of Plaintiffs' counsel, was in 2009).  The nature of SiriusXM's misconduct was non-obvious and intentionally concealed from its subscribers.  As a result of SiriusXM's intentional misconduct, omissions, and affirmative misrepresentations throughout the customer lifecycle, neither Plaintiffs nor the Class members could have, through the use of reasonable diligence, learned of the accrual of their claims against SiriusXM at an earlier time.

83.      Specifically excluded from the Class are SiriusXM and any entities in which SiriusXM has a controlling interest, SiriusXM's agents and employees, the bench officers to

whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

84.     Plaintiffs reserve the right to redefine the Class prior to class certification.

85.     **Numerosity.**  The members of the Class are so numerous that joinder of all members would be impracticable.  While Plaintiffs do not know the exact number of Class members prior to discovery, upon information and belief, there are at least five hundred thousand members in the Class.  The exact number and identities of Class members are contained in SiriusXM's records and can be easily ascertained from those records.

86.     **Commonality and Predominance.**  All claims in this action arise exclusively from the uniform policies and procedures of SiriusXM as outlined herein.  This action involves multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case.  These common questions predominate over any questions affecting individual Class members, if any.  These common questions include, but are not limited to, the following:

   a.     Whether SiriusXM employs a uniform policy of charging the U.S. Music Royalty Fee to its New Jersey customers;

   b.     Whether SiriusXM's policy and practice of advertising and quoting the prices of its music plans without the amount of the U.S. Music Royalty Fee is false, deceptive, or misleading;

   c.     Whether SiriusXM adequately and accurately disclosed the existence of the U.S. Music Royalty Fee, its nature or basis, or its amount, to Plaintiffs and Class members;

   d.     What is the nature or purpose of the U.S. Music Royalty Fee;

e.      Whether it was deceptive, misleading, and/or false for SiriusXM to add "U.S." at the beginning of the name of the U.S. Music Royalty Fee;

f.      Whether the true prices of SiriusXM's music plans, and of the U.S. Music Royalty Fee, are material information, such that a reasonable consumer would find that information important to the consumer's purchase decision;

g.      Whether it is an unconscionable business practice for SiriusXM to sign up subscribers for automatic renewal and send them a single initial sign-up email, but to never thereafter send the subscriber any periodic billing notices, bills or receipts;

h.      Whether SiriusXM has a policy of intentionally preventing subscribers from noticing that they are being charged the Fee, including, but not limited to, SiriusXM's practice of signing up subscribers for automatic renewal but then never thereafter sending the subscriber any periodic billing notices, bills or receipts, and if so whether this practice is unconscionable;

i.      Whether SiriusXM's practice of not providing a notice of the pending expiration of a consumer's multi-month free trial or promotional rate prior to charging that customer the higher rate is deceptive, an unconscionable business practice, and/or is intended by SiriusXM to reduce the likelihood of subscribers noticing that they are being charged a higher price;

j.      Whether SiriusXM has a policy and practice of falsely telling subscribers who notice and inquire about the U.S. Music Royalty Fee that it is a government-related fee and/or that it is outside of SiriusXM's control;

k.      Whether SiriusXM must include the amount of the U.S. Music Royalty Fee in its advertised and quoted service plan prices;

28

l.      Whether SiriusXM must disclose the existence or amount of the U.S. Music Royalty Fee when signing up consumers for its music plans;

m.      Whether SiriusXM's policy and practice of advertising and quoting the prices of its music plans without including the amount of the U.S. Music Royalty Fee is false, deceptive, misleading, and/or an unconscionable business practice;

n.      Whether it was deceptive or unfair for SiriusXM not to disclose, or to inadequately or inaccurately disclose, the U.S. Music Royalty Fee or its dollar amount as part of the advertised and promised price of its music plans;

o.      Whether it was deceptive, unfair, or unconscionable for SiriusXM to unilaterally charge its customers the extra-contractual U.S. Music Royalty Fee, which Fee the customers never agreed to pay, or to unilaterally charge its customers more than they ever agreed to pay for their music plans;

p.      Whether a reasonable consumer is likely to be deceived by SiriusXM's conduct, misrepresentations, and omissions alleged herein;

q.      Whether SiriusXM's misrepresentations and omissions alleged herein constitute fraudulent concealment and/or unconscionable business practices under the law of New Jersey;

r.      Whether SiriusXM has violated the implied covenant of good faith and fair dealing, implied in its contracts with Plaintiffs and the Class, by imposing the U.S. Music Royalty Fee;

s.      Whether SiriusXM's misrepresentations and omissions alleged herein violate the New Jersey Consumer Fraud Act;

t.      Whether SiriusXM's misrepresentations and omissions alleged

29

herein violate the New Jersey Truth in Consumer Contract, Warranty and Notice Act; and

u.    Whether Plaintiffs and the Class are entitled to an order enjoining SiriusXM from engaging in the misconduct alleged herein, and from continuing to charge New Jersey customers the U.S. Music Royalty Fee without adequately disclosing to and obtaining the consent of such customers.

87.    **Typicality.**  Plaintiffs, like all Class members, are current or former subscribers of SiriusXM's music plans who signed up by phone and have been charged higher periodic rates than quoted at the time of sign-up due to SiriusXM's unilateral imposition of the U.S. Music Royalty Fee.  Their claims all arise from the same course of conduct by SiriusXM, are based on the same legal theories, and face the same potential defenses.  Plaintiffs' claims are typical of all Class members' claims.  Plaintiffs are each a member of the Class they seek to represent.  All claims of Plaintiffs and the Class arise from the same course of conduct, policy and procedures as outlined herein.

88.    **Adequacy.**  Plaintiffs and their counsel will fairly and adequately protect Class members' interests.  Plaintiffs seek the same relief for themselves as for every other Class member, have no interests antagonistic to Class members' interests, and are committed to representing the best interests of the Class.  Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

89.    **Superiority.**  A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy.  Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress

for SiriusXM's conduct.  Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system.  Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct by SiriusXM.  A single adjudication would create economies of scale and comprehensive supervision by a single judge.  Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial in this case.

90.     By its conduct and omissions alleged herein, SiriusXM has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

91.     Without the proposed class action, SiriusXM will retain the benefits of its wrongdoing and will likely continue the complained-of practices, which will result in further damages to Plaintiffs and Class members.

## CAUSES OF ACTION

### COUNT I

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. § 56:8-1, _et seq_.**

92.     Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

93.     SiriusXM's representations with regard to the pricing and nature of its music plans on its website, in media including internet, television, radio and print, and by SiriusXM's sales and customer service agents are "advertisements" within the meaning of N.J.S.A. § 56:8-1(a).

94.     SiriusXM's music service plans are "merchandise" within the meaning of N.J.S.A. § 56:8-1(c).

95.    SiriusXM is a "person" within the meaning of N.J.S.A. § 56:8-1(d).

96.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. (the "CFA"), was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. See Marascio v. Campanella, 689 A.2d 852, 857 (N.J. Ct. App. 1997).

97.    The CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy, Inc., 860 A.2d 435, 441 (N.J. 2004) ("The [CFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").

98.    Indeed, "[t]he available legislative history demonstrates that the [CFA] was intended to be one of the strongest consumer protection laws in the nation." New Mea Const. Corp. v. Harper, 497 A.2d 534, 543 (N.J. Ct. App. 1985).

99.    For this reason, the "history of the [CFA] is one of constant expansion of consumer protection." Kavky v. Herbalife Int'l of Am., 820 A.2d 677, 681-82 (N.J. Ct. App. 2003).

100.    The CFA was intended to protect consumers "by eliminating sharp practices and dealings in the marketing of merchandise and real estate." Lemelledo v. Beneficial Mgmt. Corp., 696 A.2d 546, 550 (N.J. 1997).

101.    Specifically, N.J.S.A. § 56:8-2 prohibits "unlawful practices" which are defined as:

> **"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that**

> **others rely upon such concealment, suppression or omission …**
> **whether or not any person has in fact been misled, deceived or**
> **damaged thereby …"**

102.    The catch-all term "unconscionable commercial practice" was added to the CFA

by amendment in 1971 to ensure that the CFA covered, inter alia, "incomplete disclosures."

Skeer v. EMK Motors, Inc., 455 A.2d 508, 512 (N.J. Ct. App. 1982).

103.    In describing what constitutes an "unconscionable commercial practice," the New

Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad

business ethic. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

104.    In order to state a cause of action under the CFA, a plaintiff does not need to show

reliance by the consumer.  See Varacallo v. Massachusetts Mut. Life Ins. Co., 752 A.2d 807

(N.J. App. Div. 2000); Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997) (holding that

reliance is not required in suits under the NJCFA because liability results from

"misrepresentations whether 'any person has in fact been misled, deceived or damaged

thereby").

105.    As stated by the New Jersey Supreme Court in Lee v. Carter-Reed Co., L.L.C., 4

A.3d 561, 580 (N.J. 2010): "It bears repeating that the [NJCFA] does not require proof of

reliance, but only a causal connection between the unlawful practice and ascertainable loss."

106.    It is also not required that an affirmative statement be literally false in order to be

considered deceptive and misleading under the CFA. Even a statement which is literally true can

be misleading and deceptive in violation of the CFA. See Smajlaj v. Campbell Soup Co., 782 F.

Supp. 2d 84, 98 (D.N.J. 2011) (upholding a NJCFA claim where the defendant argued its written

statement was literally true, holding "the fact that the labels were literally true does not mean

they cannot be misleading to the average consumer.").

107.    A CFA violation also does not require that the merchant be aware of the falsity of the statement or that the merchant act with an intent to deceive. See Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J. 1997):

> **"One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive… An intent to deceive is not a prerequisite to the imposition of liability."**

108.    Nor is it a defense to a CFA claim that the merchant acted in good faith. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 461 (N.J. 1994) ("the Act [CFA] is designed to protect the public even when a merchant acts in good faith.").

109.    In the case at bar, SiriusXM's policy of promising specific periodic rates for its music plans but later charging an additional undisclosed, inadequately disclosed, and/or inaccurately described periodic U.S. Music Royalty Fees to its New Jersey customers, as described herein, is a deceptive, misleading, and/or unconscionable commercial practice in the sale of goods in violation of N.J.S.A. § 56:8-2 for the reasons set forth herein.

110.    This policy involves, inter alia, both misleading affirmative statements and the knowing omission of material facts.

111.    First, SiriusXM's practice of advertising its music plans for a specific periodic rate—a price to which its customers agree, but which does not reflect the actual rate that SiriusXM ultimately charges its customers because it does not include the U.S. Music Royalty Fee—is an affirmative misleading and deceptive statement in the sale of goods or services in violation of N.J.S.A. § 56:8-2.  SiriusXM's practice of categorizing and describing the U.S. Music Royalty Fee as a tax or government-related charge is also an affirmative misleading and deceptive statement in violation of N.J.S.A. § 56:8-2.

112.    Second, SiriusXM failed to disclose, or failed to adequately disclose, the U.S. Music Royalty Fee to its customers before they agreed to purchase SiriusXM's music plans, and SiriusXM continued to fail to disclose or adequately disclose the Fee, inter alia, by failing to send its customers periodic bills or itemized receipts, by intentionally falsely describing the Fee as a tax or government-related fee, and by having a policy of customer service and sales agents falsely telling customers that the Fee is a tax or other government-related charge.  SiriusXM has never explained to its customers the truth about the U.S. Music Royalty Fee—that the actual reason SiriusXM charges the Fee is that it is a surreptitious way to charge more for SiriusXM's music plans than the advertised and promised price for those plans, the price to which its customers agreed.  Thus, SiriusXM's policy also involves knowing omissions of material fact in the sale of goods in violation of N.J.S.A. § 56:8-2.

113.    SiriusXM's deceptive policies described herein also violate N.J.S.A. § 56:8-2.2, as SiriusXM advertised its services as part of a plan or scheme not to sell the services at the advertised price.

114.    Plaintiffs and Class members reasonably and justifiably expected SiriusXM to comply with applicable law, but SiriusXM failed to do so.

115.    As a direct and proximate result of these unlawful actions by SiriusXM, Plaintiffs and the Class have been injured and have suffered an ascertainable loss of money.

116.    Specifically, Plaintiffs and each Class member have been charged the undisclosed, extra-contractual, and deceptive U.S. Music Royalty Fee by SiriusXM on a periodic basis for years, and for years have been forced to pay those Fees to SiriusXM without having ever agreed to said Fee or knowing the true nature of the Fee.  These payments made to SiriusXM constitute an ascertainable loss by Plaintiffs and the Class.

117.     Pursuant to N.J.S.A. § 56:8-19, Plaintiffs seek, inter alia, actual damages, treble damages, and injunctive relief for themselves and the Class.

## COUNT II

**VIOLATION OF THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT, N.J.S.A. § 56:12-14, et seq.**

118.     Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

119.     Plaintiffs and Class members are "consumers" within the meaning of N.J.S.A. § 56:12-15.

120.     Defendant is a "seller" within the meaning of N.J.S.A. § 56:12-15.

121.     SiriusXM's music plans are a "service which is primarily for personal, family or household purposes" within the meaning of N.J.S.A. § 56:12-15.

122.     The advertisements and representations on SiriusXM's website and in various email and other advertisements are consumer "notices," "signs" and/or "warranties" within the meaning of N.J.S.A. § 56:12-15.

123.     By the acts alleged herein, SiriusXM has violated N.J.S.A. § 56:12-15 because, in the course of its business, SiriusXM has offered, displayed and presented written consumer notices, signs and warranties to Plaintiffs and the Class which contained provisions that violated their clearly established legal rights under state law, within the meaning of N.J.S.A. § 56:12-15.

124.     The clearly established rights of Plaintiffs and the Class under state law include the right not to be subjected to unconscionable commercial practices and false written affirmative statements of fact in the sale of goods or services, as described herein, which acts are prohibited by the CFA, N.J.S.A. § 56:8-2.

125.    Plaintiffs and each Class member are aggrieved consumers for the reasons set forth herein, and specifically because, inter alia, each was charged the undisclosed, extra-contractual U.S. Music Royalty Fee by SiriusXM and paid those Fees to SiriusXM, and each Plaintiff and Class member suffered an ascertainable loss under the CFA as described above.

126.    Pursuant to N.J.S.A. § 56:12-17, Plaintiffs seeks a statutory penalty of $100 for each Class member, as well as actual damages and attorneys' fees and costs.  See N.J.S.A. § 56:12-17, providing that a seller who violates the TCCWNA: "shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs." See also United Consumer Fin. Servs. Co. v. Carbo, 410 N.J. Super. 280, 310 (App. Div. 2009), affirming the trial judge's decision to award the $100 statutory penalty to each class member under N.J.S.A. § 56:12-17 of TCCWNA, stating:

> **"[T]he $100 civil penalty is not unreasonably disproportionate when viewed in that context, whether it is considered with respect to an individual consumer or the 16,845 consumers whose contracts included the prohibited fee. We note that when assessing the constitutional reasonableness of punitive damage awards, courts are directed to consider and give "substantial deference" to judgments made by the Legislature in fixing civil penalties. Nothing about the facts of this case or the numerosity of this class warrants a more searching evaluation of the reasonableness of awarding the civil penalty selected by the Legislature to each member of this class."** (citation omitted).

## COUNT III

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

127.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

128.    SiriusXM has violated the covenant of good faith and fair dealing by its conduct alleged herein, which includes but is not limited to:  unilaterally imposing the undisclosed, extra-contractual U.S. Music Royalty Fee; misrepresenting the prices of its music plans and concealing the true prices of its music plans in its advertising; misrepresenting the prices of its music plans by advertising or quoting prices that did not include the U.S. Music Royalty Fee; failing to disclose or adequately disclose the existence, amount, or nature of the U.S. Music Royalty Fee; and misrepresenting to members of the public that its own discretionary service charges are taxes, government or regulatory fees, charges imposed to recover costs billed to SiriusXM by the government, and/or charges over which SiriusXM has no control.

129.    Alternatively, to the extent any applicable contract could be read as granting SiriusXM discretion to impose the U.S. Music Royalty Fee—which Plaintiffs do not concede—that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by New Jersey law.

130.    SiriusXM has abused any discretion it purportedly had under any applicable contract to impose the U.S. Music Royalty Fee on Plaintiffs and Class members.  For example:

a.    SiriusXM imposed the U.S. Music Royalty Fee as a covert way to charge customers higher rates without having to advertise such higher rates;

b.    SiriusXM does not include the amount of the U.S. Music Royalty Fee in the advertised and quoted prices for its music plans;

c.    SiriusXM fails to disclose the Fee—or to even mention the words "U.S. Music Royalty Fee"—in <u>any</u> SiriusXM advertising, including in the fine print;

d.    SiriusXM's sole disclaimer is that "Fees and taxes apply," but in reality <u>zero</u> other fees apply, such that vast majority of the purported "Fees and taxes"

charged is the undisclosed U.S. Music Royalty Fee;

        e.     None of SiriusXM's competitors charge any separate royalty fee over and above their advertised music plan prices, such that SiriusXM knows that reasonable consumers would not expect SiriusXM to charge the U.S. Music Royalty Fee, let alone hide it as "Fees and Taxes";

        f.     To prevent subscribers from noticing they are being charged the U.S. Music Royalty Fee, SiriusXM has a policy and practice of signing up subscribers for automatic renewal by default and never thereafter sending the subscriber any periodic bills or itemized receipts;

        g.     SiriusXM put "U.S." in the beginning of the name of the U.S. Music Royalty Fee to falsely indicate to consumers that it is a government-related fee; and

        h.     SiriusXM has a policy of falsely telling customers who notice and inquire about the U.S. Music Royalty Fee that it is a government-related fee and/or that it is outside of SiriusXM's control.

131.     SiriusXM's imposition of the U.S. Music Royalty Fee defied customers' reasonable expectations, was objectively unreasonable, and frustrated the basic terms of the parties' agreement.  SiriusXM's conduct and actions alleged herein were done in bad faith.

132.     SiriusXM's conduct described herein has had the effect, and the purpose, of denying Plaintiffs and Class members the full benefit of their bargains with SiriusXM.

133.     Plaintiffs and the Class members have performed all, or substantially all, of the obligations imposed on them under any applicable agreements with SiriusXM.  There is no legitimate excuse or defense for SiriusXM's conduct.

134.    Any attempts by SiriusXM to defend its overcharging through reliance on supposed contractual provisions will be without merit.  Any such provisions are either inapplicable or are unenforceable because they are void, illusory, lacking in mutuality, are invalid exculpatory clauses, violate public policy, are procedurally and substantively unconscionable, and/or are unenforceable in light of the hidden and deceptive nature of SiriusXM's misconduct, among other reasons.  Any such provisions would not excuse SiriusXM's abuses of discretion or otherwise preclude Plaintiffs and the Class from recovering for breaches of the covenant of good faith and fair dealing.

135.    Plaintiffs and members of the Class sustained damages as a result of SiriusXM's breaches of the covenant of good faith and fair dealing.  Plaintiffs seek damages in the amount of the U.S. Music Royalty Fees paid by Plaintiffs and the Class members.

<u>**COUNT IV**</u>

**NEW JERSEY UNIFORM DECLARATORY JUDGMENTS ACT**
**N.J.S.A. § 2A:16-51, <u>et seq</u>.**

136.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if set forth fully herein.

137.    Pursuant to the New Jersey Declaratory Judgments Act, N.J.S.A. § 2A:16-51, <u>et seq</u>., Plaintiffs and the Class need, and are entitled to, an order for injunctive and declaratory relief:

a.      Declaring that SiriusXM's policy of charging a deceptive, extra-contractual, inadequately-disclosed U.S. Music Royalty Fee is a violation of New Jersey law;

b.       Enjoining SiriusXM from continuing to charge the U.S. Music

Royalty Fee to New Jersey consumers without adequately disclosing to and obtaining the

consent of such consumers;

c.       Ordering SiriusXM to hold in constructive trust all U.S. Music

Royalty Fee payments received from the Class; and

d.       Ordering SiriusXM to perform an accounting of all such U.S.

Music Royalty Fee payments.

138.    Plaintiffs and the Class members have a significant interest in this matter in that

each has been or will be subjected to the unlawful policies alleged herein.

139.    SiriusXM is continuing to engage in the policies alleged herein.

140.    Plaintiffs are each a current customers and subscribers to SiriusXM music plans,

and are currently being charged the unlawful U.S. Music Royalty Fee on a periodic basis.

141.    Based on the foregoing, a justifiable controversy is presented in this case,

rendering declaratory judgment and injunctive relief appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask this Court to:

A.       Certify the case as a class action and appoint Plaintiffs and their counsel to

represent the class;

B.       Declare that Defendant is financially responsible for notifying all class members

of Defendant's deceptive and unconscionable business practices alleged herein;

C.       Find that Defendant's conduct alleged herein be adjudged and decreed in

violation of the New Jersey laws cited above;

D.      Declare that Defendant's policy of charging a deceptive, extra-contractual, inaccurately-disclosed U.S. Music Royalty Fee to be a violation of New Jersey law;

E.      Permanently enjoin Defendant from engaging in the misconduct alleged herein;

F.      Permanently enjoin Defendant from charging the U.S. Music Royalty Fee without adequately disclosing said charge to its customers and obtaining consent therefor;

G.      Retain jurisdiction to monitor Defendant's compliance with the permanent injunctive relief;

H.      Order Defendant to hold in constructive trust all U.S. Music Royalty Fee payments received from the class;

I.      Order Defendant to perform an accounting of all such U.S. Music Royalty Fee payments;

J.      Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

K.      Award Plaintiffs and the class members treble damages under the Consumer Fraud Act;

L.      Award Plaintiffs and the class members a $100 per person statutory penalty under Truth in Consumer Contract, Warranty and Notice Act;

M.      Award Plaintiffs reasonable attorneys' fees and costs; and

N.      Grant such other and further legal and equitable relief as the Court deems just and equitable.

## **JURY TRIAL DEMAND**

PLEASE TAKE NOTICE that the Plaintiffs hereby demand a trial by jury as to all parties.

Dated:  May 17, 2023                          BY: _____
                                              DeNITTIS OSEFCHEN PRINCE, P.C.
                                              Stephen P. DeNittis, Esq. (SD-0016)
                                              Joseph A. Osefchen, Esq. (JO-5472)
                                              Shane T. Prince, Esq. (SP-0947)
                                              525 Route 73 North, Suite 410
                                              Marlton, NJ 08053
                                              Telephone: (856) 797-9951
                                              Facsimile: (856) 797-9978
                                              Email: sdenittis@denittislaw.com
                                              Email: josefchen@denittislaw.com
                                              Email: sprince@denittislaw.com

                                              HATTIS & LUKACS
                                              Daniel M. Hattis, Esq.*
                                              Paul Karl Lukacs, Esq.*
                                              11711 SE 8th St, Ste 120
                                              Bellevue, WA 98005
                                              Telephone: (425) 233-8650
                                              Facsimile: (425) 412-7171
                                              Email: dan@hattislaw.com
                                              Email: pkl@hattislaw.com

                                              * Pro Hac Vice Application To Be Submitted

                                              *Attorneys for Plaintiffs and the Proposed Class*