**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBYN POSTERNOCK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>Defendant. | Civil Action No. 23-2680 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Sirius XM Radio Inc.'s ("Sirius XM" or "Defendant") Renewed Motion to Compel Arbitration and Stay the Proceedings (the "Motion"). (ECF No. 28.) Plaintiff Robyn Posternock ("Plaintiff") opposed the Motion (ECF No. 29), and Defendant replied (ECF No. 30). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, the Court grants Defendant's Motion and stays the proceedings.

**I.   BACKGROUND**

   **A.   Factual Background**

Sirius XM is a satellite radio and internet provider with more than 33 million customers nationwide. (Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 28-2; Response to the Statement of Undisputed Material Facts ("RSUMF") ¶ 1, ECF No. 29-14.) Plaintiff is a former

subscriber of Sirius XM who used Sirius XM from 2021 to 2023. (SUMF ¶¶ 3-5; RSUMF ¶¶ 3-4.)[1] Plaintiff purchased a new vehicle in 2020 which included a Sirius XM trial subscription. (SUMF ¶¶ 4, 29; RSUMF ¶¶ 4, 28.) As part of this promotion, Sirius XM mailed Plaintiff a physical "Welcome Kit," which included a letter and a hard copy of Sirius XM's Customer Agreement ("Customer Agreement"). (SUMF ¶ 29; RSUMF ¶ 28; *see* Fried Decl. Ex. 3, ECF No. 14.) The letter stated in part, "See our Customer Agreement (enclosed) which governs your trial subscription. Access it anytime at www.siriusxm.com" and "Please see our Customer Agreement at www.siriusxm.com for complete terms and how to cancel." (SUMF ¶ 29; RSUMF ¶ 28; *see* Fried Decl. Ex. 3.)

Upon the expiration of her free trial, Plaintiff became a paid subscriber to Sirius XM in 2021.[2] (SUMF ¶ 11; RSUMF ¶ 10.) In May 2021, Plaintiff chatted with a Sirius XM representative to extend her subscription, and the representative informed her that her subscription would be governed by the terms of the Customer Agreement. (SUMF ¶ 11; RSUMF ¶ 10; *see* Myers Decl. ¶¶ 13-14, Ex. 2, ECF No. 12.) The relevant portion of the exchange went as follows:

> Plaintiff: can[] you help me get the 6 more months for $2.13? ty in advance . . .

---

[1] It appears to the Court that Plaintiff inadvertently consolidated her responses to paragraphs four and five of Sirius XM's SUMF into one paragraph of the RSUMF. (*See* SUMF ¶¶ 4-5; RSUMF ¶ 4.) The Court notes that as a result, the numbering in Plaintiff's RSUMF does not mirror the numbering in Defendant's SUMF. (*Cf.* SUMF ¶¶ 5-33; RSUMF ¶¶ 5-32.)

[2] Based on the record, the Court is unable to determine the exact date Plaintiff became a paid subscriber of Sirius XM. While Plaintiff contends that she became a paid subscriber of Sirius XM "around February 2021," the earliest produced transcripts of conversations between the parties are from May 2021, and these transcripts suggest Plaintiff was enrolled in a free trial until August 05, 2021. (*See* Pl.'s Opp'n Br. 10-11; Myers Decl. Ex. 2.) Because Plaintiff does not contend otherwise, the Court assumes for the purposes of this Motion that to the extent Plaintiff became a paid subscriber of Sirius XM prior to May 2021, any conversations Plaintiff had with Sirius XM concerning initial enrollment were substantially similar to those she had with Sirius XM between May 2021 and April 2023 via webchat or telephone. (*See* SUMF ¶¶ 15-27; RSUMF ¶¶ 5, 14-26.)

> Sirius XM Representative: do you wish to have the same package after the 3 free months?
>
> Plaintiff: yes please
>
> Sirius XM Representative: thank you! I'm going to share with you some important information before proceeding. I kindly ask you to please reply if you agree at the end.
>
> Plaintiff: ok
>
> Sirius XM Representative: let's go over the details. the requested service has been changed. the monthly siriusxm all access plan you chose will start at the end of your trial on august 05, 2021. today's change generated a credit of $0.19. this amount will be applied to your account. your service will automatically renew on September 05, 2021 at then current rates, and bill every month. you may cancel at any time by calling us at [redacted].
>
> your customer agreement including the refund policy can be found on our website at: siriusxm.com or you can request it any time by phone. if there is an email address on your account, a confirmation of this transaction will be sent to that email address within 5 days.
>
> do you accept these terms?
>
> and may i have your permission to charge your card ending in [redacted] for $28.47 at the end of your trial on august 05, 2021, minus any credits on your account and for all future charges?
>
> Plaintiff: yes please.

(Myers Decl. Ex. 2.) That same day, after Plaintiff accepted "these terms" and confirmed her purchase, Sirius XM sent Plaintiff a confirmation email, which stated that Plaintiff's "subscription is governed by the Sirius XM Customer Agreement" and provided a hyperlink to the agreement. (SUMF ¶ 14; RSUMF ¶ 13.)

On three more occasions between 2021 and 2023, Plaintiff made changes to her subscription plan by either calling Sirius XM or using Sirius XM's webchat service. (SUMF ¶¶ 15-27; RSUMF ¶¶ 14-26). Each time Plaintiff made a change to her subscription, she was asked to accept the Customer Agreement. (SUMF ¶¶ 15-27; RSUMF ¶¶ 14-26; *see* Myers Decl. Ex. 3

3

("[Y]our customer agreement including the refund policy can be found on our website at: siriusxm.com or you can request it at any time by phone . . . do you accept these terms?"); *id.* at Ex. 4 ("Your Customer Agreement including the refund policy can be found on our website at: siriusxm.com or you can request it at any time by phone . . . Do you accept these terms? . . . Let me know if you accept the terms"); *id.* at Ex. 4 ("Your Customer Agreement including the refund policy can be found on our website at Siriusxm.com or you can request it at any time by phone . . . Do you accept th[e]se terms?").) Every time Plaintiff was asked if she "accept[ed] these terms," Plaintiff replied, "yes." (SUMF ¶ 16 ("yes"); SUMF ¶ 20 ("lol yes I do accept"); SUMF ¶ 25 ("yes"); *see also* Myers Decl. Exs. 3-5.) Following each of these conversations, Plaintiff received an email or letter from Sirius XM, confirming her new subscription and informing her, "Your subscription is governed by the SiriusXM Customer Agreement," available through a hyperlink or online. (SUMF ¶¶ 18, 22, 27; RSUMF ¶¶ 17, 21, 26.)

As relevant here, the Customer Agreement contains an arbitration provision and states, in bold, all capitalized terms:

> **PLEASE READ THE PROVISIONS OF THIS SECTION CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION . . . THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, BUT THEY CHOOSE TO HAVE ANY DISPUTES RESOLVED THROUGH ARBITRATION.**

(SUMF ¶ 31; RSUMF ¶ 30.)[3]

On May 24, 2023, Plaintiff canceled her Sirius XM subscription. (SUMF ¶ 5; RSUMF ¶ 4.)

---

[3] The quoted language refers to the version of the Customer Agreement that was initially mailed to Plaintiff in December 2020. (SUMF ¶ 31; RSUMF ¶ 30.) Sirius XM has since modified the language of the Customer Agreement, but the arbitration provision remains substantively the same. *See* Sirius XM Customer Agreement, https://www.siriusxm.com/customer-agreement (last updated Oct. 3, 2024).

B.  **Procedural Background**

On May 17, 2023, Plaintiff filed this putative class action against Sirius XM, alleging Sirius XM violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* (the "NJCFA"), the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, *et seq.* (the "TCCWNA"), New Jersey Uniform Declaratory Judgments Act, N.J.S.A. § 2A:16-51, *et seq.*, and the implied covenant of good faith and fair dealing, by failing to properly disclose certain fees. (Compl. ¶¶ 1, 11, 92-141, ECF No. 1.)

In response to the Complaint, Sirius XM filed a Motion to Compel Arbitration and Stay the Proceedings, arguing that Plaintiff's claims are subject to mandatory arbitration. (ECF No. 8.) Plaintiff filed an Amended Complaint, removing two of the named plaintiffs (*see* Am. Compl., ECF No. 17), and opposed the Motion, asserting that the arbitrability of the dispute was not apparent from the face of the Amended Complaint, and that the parties must be allowed to engage in limited discovery as to the validity of the parties' arbitration agreement. (ECF No. 18.) The Court granted Plaintiff's request for limited discovery regarding the arbitrability of the dispute. (ECF No. 20). Upon completion of the limited discovery, Sirius XM filed the instant renewed Motion to Compel Arbitration and Stay the Proceedings. (ECF No. 28.) Sirius XM's Motion is now ripe for resolution.

II.  **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") dictates that written arbitration agreements entered into in connection with "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." 9 U.S.C. § 2. When parties seek to enforce an arbitration agreement, they may request from the court "an order directing the parties to proceed to arbitration in accordance

5

with the terms of the agreement." *Id.* § 4. Accordingly, the FAA grants courts the power to compel arbitration and to stay or dismiss claims subject to a valid arbitration agreement. *Id.* § 3. Specifically, the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues . . . to which an arbitration agreement" applies. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). This mandate that courts "rigorously enforce agreements to arbitrate" stems from the legislative intent which drove the enactment of the FAA; specifically, Congress enacted the FAA to establish a strong federal policy in support of private arbitration agreements. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Dean Whitter Reynolds, Inc.*, 470 U.S. at 221).

The Third Circuit has enumerated a standard for district courts to apply when deciding a motion to compel arbitration. The Third Circuit explained:

> When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.
>
> But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (alteration in original) (internal quotation marks and citations omitted); *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 320 (3d Cir. 2024) (clarifying *Guidotti*'s directive and explaining that when "a complaint does not set forth clearly that the claims are subject to an arbitration agreement," pre-arbitration discovery may be warranted). After limited discovery, the court may

entertain a renewed motion to compel arbitration, this time judging the motion under the summary judgment standard of Rule 56. *Guidotti*, 716 F.3d at 776.

### III. DISCUSSION

Sirius XM contends that the Court should compel Plaintiff's claims to individual arbitration because the parties entered a contract with an unambiguous arbitration clause when Plaintiff became a Sirius XM subscriber and expressly accepted the Customer Agreement through webchat or over the phone. (*See* Def.'s Moving Br. 2, ECF No. 28-1.) Plaintiff opposes the Motion, contending that while she formed "a contract" with Sirius XM during the "telephone or smartphone chat sign up procedures," she never "executed any clear waiver of her right to sue." (Pl.'s Opp'n Br. 1, ECF No. 29.)

Under New Jersey law, which governs here,[4] "[a] contract arises from [an] offer and acceptance," and must be sufficiently definite "that the performance to be rendered by each party can be ascertained with reasonable certainty." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (citation omitted). Therefore, "if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Id.* However, "where the parties do not agree to one or more essential terms . . . courts generally hold that the agreement is unenforceable." *Id.* Furthermore, courts in New Jersey have held that, in order to find a manifestation of assent, "[i]t is requisite that there be an unqualified acceptance." *Id.* An offeree's manifestation of assent may be expressed "through words, creating an express contract, or by conduct, creating a contract implied-in-fact." *Id.* at 436 (citing *Restatement (Second) of Contracts* § 19(1) (1981)).

---

[4] A court deciding whether the parties agreed to arbitrate a certain matter should apply "ordinary state-law principles governing contract formation." *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003) (citation omitted).

Here, the Court finds that that there is no genuine dispute of material fact as to whether Plaintiff affirmatively accepted all of the terms of the Customer Agreement, including its mandatory arbitration provisions, when she expressly agreed to be bound by the Customer Agreement during the sign-up process. On essentially the same facts, involving a former Sirius XM subscriber who assented to Sirius XM's Customer Agreement over the phone, the New Jersey Superior Court, as well as other courts, have compelled arbitration. *See Parrella v. Sirius XM Holdings, Inc.*, No. A-4283-19, 2022 WL 151939, at *4-5 (N.J. Super. Ct. App. Div. Jan. 18, 2022) (compelling arbitration where plaintiff subscribed to Sirius XM over the phone, the Sirius XM representative stated, "Your customer agreement can be found on our website . . . or . . . by phone . . . Do you accept these terms[?]" and plaintiff responded "yes"); *Carovillano v. Sirius XM Radio Inc.*, No. 23-4723, 2024 WL 3460040 (S.D.N.Y. July 18, 2024) (compelling arbitration where plaintiffs who sought to bring a putative class action subscribed to Sirius XM over the phone, the Sirius XM representatives informed each plaintiff that the subscriptions were governed by a "customer agreement" and asked if each plaintiff "accept[ed] these terms," to which each plaintiff answered "yes" or "yep"); *Wright v. Sirius XM Radio Inc.*, No. 16-01688, 2017 WL 4676580 (C.D. Cal. June 1, 2017) (compelling arbitration where Sirius XM provided "substantial evidence" that plaintiff was mailed a copy of the Customer Agreement and plaintiff assented to the Customer Agreement after the Sirius XM representative advised him of the agreement over the phone).

Similar to *Parrella*, *Carovillano*, and *Wright*, here, each time Plaintiff enrolled in or modified her Sirius XM subscription, Plaintiff was informed that her subscription was governed by the "Customer Agreement," which she could read in full on Sirius XM's website or request via phone. (SUMF ¶¶ 15-27; RSUMF ¶¶ 14-26.) When asked whether she accepted "these terms," Plaintiff expressly stated "yes." (SUMF ¶¶ 15-27; RSUMF ¶¶ 14-26.) After each conversation,

Sirius XM further sent Plaintiff a confirmation email or letter that informed Plaintiff her subscription was governed by the Customer Agreement, and that the agreement could be found on Sirius XM's website. (SUMF ¶¶ 15-27; RSUMF ¶¶ 14-26.)

Plaintiff's argument that she did not "unambiguously agree[]" to the full Customer Agreement because she was not "clearly asked to agree to anything other than six terms explicitly mentioned by [Sirius XM's] agents: type of music plan, duration of music plan, price of plan, right to cancel, right to a refund and an automatic renewal provision" is unpersuasive. (Pl.'s Opp'n Br. 2-3, 22.) Contrary to Plaintiff's characterizations, the Sirius XM representatives did not ask Plaintiff whether she agreed to specified terms within the Customer Agreement—instead, they more broadly stated, "your [C]ustomer [A]greement including the refund policy can be found on our website at: siriusxm.com or you can request it any time by phone" and then asked if Plaintiff "accept[ed] these terms." (SUMF ¶¶ 15-27; RSUMF ¶¶ 14-26.) When describing the terms of the Customer Agreement, the representatives also used the phrase "including," which put Plaintiff on reasonable notice that the representatives were not describing an exhaustive list of terms, and that the Customer Agreement included terms beyond those expressly discussed in the chat. (*See, e.g.*, Myers Decl. Ex. 2 ("your customer agreement *including* the refund policy can be found on our website at: siriusxm.com or you can request it any time by phone") (emphasis added).)

Based on the record, the Court finds that a "reasonably prudent consumer in [Plaintiff's] position would have understood that by verbally assenting to 'these terms' during the phone [or webchat] sign-up process, [s]he was agreeing to be bound by the full Customer Agreement referenced by the Sirius XM representative." *Carovillano*, 2024 WL 3460040, at *6. Plaintiff's continued use of Sirius XM and repeated modification of her subscription support the Court's finding that Plaintiff understood and intended to be bound by the Customer Agreement. *Parrella*,

9

2022 WL 151939, at *4 (holding former Sirius XM subscriber "manifested an intention to be bound by the agreement's terms, including the submission of any dispute to arbitration" when he "accept[ed] [] each trial and paid subscription use" including "several trial and full-price service subscriptions"); *Wright*, 2017 WL 4676580, at *6 (finding mutual assent where plaintiff "continued to use his Sirius [XM] subscription after receiving the Customer Agreement" and "even called again and upgraded his subscription"). That Plaintiff chose not to read the Customer Agreement in full prior to accepting its terms does not vitiate a finding of mutual assent. "Once there is reasonable notice, a party is bound by those terms, even if [s]he failed to read them." *Noble v. Samsung Elecs. Am., Inc.*, No. 16-1903, 2017 WL 838269, at *3 (3d Cir. Mar. 3, 2017) (citing cases); *Hoover v. Sears Holding Corp.*, No. 16-4520, 2017 WL 2577572, at *2 (D.N.J. June 14, 2017) (enforcing arbitration agreement where plaintiff "had the opportunity to obtain the terms, and had notice that he was agreeing to terms, if he chose not to read them").

Because the Court finds there is no genuine dispute of material fact that Plaintiff expressly agreed to be bound by the Customer Agreement, the Court grants Sirius XM's Motion to Compel Arbitration and Stay the Proceedings.[5] *Smith v. Spizzirri*, 601 U.S. 472, 472 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.")

---

[5] Plaintiff also unpersuasively argues that Sirius XM cannot incorporate a document "extraneous to the contract" into the original contract unless it is "made clear 'beyond doubt' that the extraneous document is being made part of the contract, and the other contracting party must clearly agree to that incorporation." (Pl.'s Opp'n Br. 5, 19.) Plaintiff mischaracterizes the present dispute. Here, Sirius XM is not seeking to incorporate any extraneous documents into the executed contract. The executed contract was the Customer Agreement, which includes the at-issue arbitration provision. (*See* SUMF ¶¶ 15-27; RSUMF ¶¶ 14-26.) Because the Court finds that there is no genuine dispute of material fact that Plaintiff assented to the Customer Agreement, Plaintiff's argument fails.

10

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration and Stay the Proceedings is granted. The Court will issue an Order consistent with this Memorandum Opinion.

*[signature]*

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE